UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----

| | |
|---|---|
| DAVID WEBER, on his own behalf and on behalf of his wife, Jill Weber, and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>*Defendants*. | No. 19-cv-13728<br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

----

Plaintiff David Weber ("Plaintiff") on his own behalf and as the Authorized Representative, with a full power-of-attorney, for his wife, Jill Weber, and on behalf of all others similarly situated, brings the following complaint against Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon" or "Defendant"), as follows:

## INTRODUCTION

1. Horizon is in the business of insuring and administering health plans, many of which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461. Among other things, this means that Horizon is responsible for interpreting written plan terms, making coverage determinations, and causing benefit payments to be made. As such, Horizon is a fiduciary under ERISA.

2. Most of the health plans administered by Horizon, including Plaintiff's, cover health care services received from out-of-network ("ONET") providers (who are not contracted with Horizon and have not agreed to accept payments below their billed charges).

3. With respect to such ONET services, the written terms of Horizon's plans articulate one of two different reimbursement methodologies, either (a) the plan states that ONET benefit payments are based on a percentage of Medicare rates ("Medicare-based plans"); or (b) the plan states that ONET benefit payments are based on a percentage of "Reasonable and Customary charges," or "R&C" ("R&C Plans"). This case is focused solely on Horizon's calculation of ONET benefits under R&C Plans.

4. As alleged herein, despite the fact that Plaintiff is insured by a Horizon R&C plan, Horizon used (and continues to use) a Medicare-based methodology to determine and pay his ONET benefits. By doing so, Horizon violated the written terms of Plaintiff's plan, deprived Plaintiff of benefits that were owed, and violated Horizon's fiduciary duties under ERISA.

## THE PARTIES

5. Plaintiff Weber is a retired research scientist with Roche Pharmaceuticals ("Roche"), a division of F. Hoffman-La Roche AG, who resides in Nutley, New Jersey. Plaintiff is a participant in an insurance plan offered by Roche, which is administered by Horizon. This plan, which is governed by ERISA, covers both Plaintiff and his wife, who is a plan beneficiary.

6. Horizon is a Health Services Corporation authorized under the New Jersey Health Service Corporations Act, *N.J.S.A.* 17:48E-1 to 68, with a principal place of business at Three Penn Plaza East, Newark, NJ 07105-2200. It issues and administers health insurance plans that cover approximately 3.7 million insureds, and is delegated responsibility to make benefit determinations pursuant to those plans. As such, Horizon is a fiduciary under ERISA with regard to its benefit determinations at issue in this litigation.

## JURISDICTION AND VENUE

7. Subject-matter jurisdiction is appropriate over Plaintiff's claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

8. This Court has personal jurisdiction over Horizon because Horizon is headquartered in this State.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (c)(2) by virtue of Horizon's residence in this district.

## FACTUAL ALLEGATIONS

**A.  Horizon's Reimbursement Methodology for ONET Services**

10. In determining reimbursement rates for ONET services, Horizon previously established R&C charges for ONET services based on the "Ingenix Database," which was developed and promulgated by UnitedHealthcare, a competing health insurance company and claims administrator. A number of litigations were brought against UnitedHealthcare and other insurers, however, based on the allegation that the Ingenix database was improperly designed to underreport R&C (or usual, customary and reasonable ("UCR")) rates.

11. In 2009, Horizon was sued for its use of the Ingenix Database in *McDonough v. Horizon Healthcare Servs., Inc.*, No. CIV.A. 09-571 SRC (D.N.J.). Horizon settled that action in 2013, for injunctive relief relating to how it determines R&C rates for ONET services. Among other things, Horizon agreed in the settlement to discontinue using the Ingenix database for setting R&C rates and, further, to revise all plans sold or renewed by Horizon at of 2014 "to clearly state the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers" and to "update its public website and its member portal to include general information regarding the manner in which Horizon derives the Allowed amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers."

12. This settlement, which covered over 2.8 million insureds, was subsequently approved by the District Court in 2014, and was affirmed by the Third Circuit Court of Appeals in

2015. *See McDonough v. Horizon Healthcare Servs., Inc.*, 2014 WL 3396097, at *3 (D.N.J. July 9, 2014), *aff'd sub nom. McDonough v. Horizon Blue Cross Blue Shield of New Jersey*, 641 F. App'x 146 (3d Cir. 2015).

13. In compliance with the settlement, Horizon has posted an explanation for its ONET reimbursement policy on its website, under the heading "Out-of-Network Payments." *See* https://www.horizonblue.com/members/education-center/understanding-your-coverage/out-of-network-payments.

14. In this statement, Horizon informs its insureds that patients who use ONET services "generally will have to pay more out of pocket than if [they] used in-network health care professionals," since "[o]ut-of-network providers are not contractually required to accept Horizon [Blue Cross Blue Shield of New Jersey's ("BCBSNJ")] reimbursement as full payment for the services and may bill [patients] for the balance of the charges above Horizon BCBSNJ's reimbursement."

15. With respect to determining ONET reimbursement levels, Horizon states:

> Horizon BCBSNJ uses many sources to calculate its reimbursement rate for out-of-network services, including industry resources provided by entities such as FAIR Health, the Centers for Medicare & Medicaid Services (CMS), and other databases. Horizon BCBSNJ uses these fee schedules to calculate a reimbursement allowance that corresponds to your out-of-network benefits, taking into account your coinsurance, copayment, out-of-network deductible or any other member out-of-pocket costs.

Horizon then specifically directs insureds to "review your coverage documents such as your benefit booklet or contact your group administrator or Horizon BCBSNJ members services regarding the specific reimbursement method or fee schedule for out-of-network services applicable to your plan."

16. Horizon proceeds to outline its two primary methodologies for setting ONET reimbursement rates, depending on whether the written terms of the plan at issue indicate that it is a Medicare-based Plan or an R&C Plan.

17. With respect to Medicare-based plans, Horizon states:

Medicare rates are set by CMS for reimbursement of particular medical services. Horizon BCBSNJ currently offers group administrators various options pursuant to which reimbursements for out-of-network services are established using 110%, 150%, 180% or 250% of CMS rates.

18. As for R&C Plans, Horizon explains that it uses FAIR Health:

FAIR Health is a national independent, not-for-profit company that was established following a review of out-of-network reimbursement methodologies by the New York Attorney General's office. FAIR Health promotes transparency in health care reimbursements and provides consumers with a mechanism to estimate the cost of out-of-network services. FAIR Health relies on a database of billions of billed medical and dental services. Service charges for a particular service are arranged from low to high, and percentiles are assigned for each of these charges based upon the full range of reported charges for a particular service in a specific geographic area. Horizon BCBSNJ currently offers group administrators various options pursuant to which reimbursements for out-of-network services are established by reference to the 70th, 80th or 90th percentile of FAIR Health.

Horizon added that it "updates its FAIR Health cost data on an annual basis," and referred insureds to the FAIR Health Resources website for additional information. *See* https://www.fairhealth.org/consumer-resources.

19. FAIR Health was established in October 2009 as part of the settlement of an investigation by the Office of the Attorney General of New York State into the health insurance industry's practice of determining out-of-network reimbursement based on data compiled and controlled by a major insurer, which the Attorney General determined was operating under a clear conflict of interest and was alleged to underpay out-of-network services. FAIR Health was subsequently formed "to establish and maintain a new database that could be used to help insurers

determine their reimbursement rates for out-of-network charges and provide patients with a clear, unbiased explanation of the reimbursement process."

20. Using millions of healthcare claims submitted to it by insurers, health care plans, and providers, FAIR Health created a database that reflects the rates that most providers charge in a given area. Publicly available on its website, a consumer can put in the zip code where a health care service is being provided and the Current Procedural Terminology ("CPT") Code to be used by the provider for each specific healthcare service. CPT Codes are numbers developed and licensed by the American Medical Association to identify each individual healthcare service for billing purposes.

21. Upon the zip code and CPT Code being input into the database, FAIR Health will provide the UCR for the pertinent procedure in the designated geographic area. As FAIR Health explains:

> The Estimated Charge is what FAIR Health, based on its database, estimates that a medical provider in your area may bill for the procedure you selected when performed out-of-network. This estimate is based on the charges billed by providers for this service in the geozip where the service was performed. (A geozip, which defines a geographic region in our database, generally corresponds to the first three digits of a zip code.)
>
> The estimate shown is based on the 80th percentile, meaning that 80% of the charges in our database for this procedure in your area were lower than or equal to our estimate and 20% were higher than or equal to our estimate. We use the 80th percentile because many insurers use the 80th percentile to determine usual, customary and reasonable (UCR) rates upon which they base out-of-network reimbursement.

22. As detailed herein, Horizon improperly used a Medicare-based methodology for setting ONET reimbursements for Plaintiff's R&C Plan, rather than R&C rates based on FAIR Health.

   B.   **Plaintiff Weber**

23. Weber is a retired employee of a private company. He and his wife receive health insurance through his employer pursuant to a plan administered by Horizon. As a "self-funded"

plan, the benefits issued to or on behalf of Weber by the plan are funded by Weber's former employer. Horizon, however, has been hired as the claims administrator of the plan and has been delegated the responsibility to interpret the plan, make all benefit decisions, and resolve all appeals. Weber's Plan is governed by ERISA.

24. Pursuant to the Weber Plan, he and his wife are entitled to receive covered services from ONET providers. The written terms of Plaintiff's plan state that ONET services will be reimbursed based on R&C, defined as follows:

> **Reasonable and Customary (R&C)** means an amount that does not exceed the general level of charges being made by other similar providers in the locality where the charge is incurred, when furnishing similar treatment, services or supplies to individuals of the same sex and of comparable age, for a similar service and supply. The term "locality" means a county or such greater area as is necessary to establish a representative cross section of those who regularly furnish the type of treatment, services, or supplies for which the charge was made. You will be responsible for any charge over and above R&C.

25. On July 7, 2016, Plaintiff's wife, and a beneficiary under his Horizon plan, received knee surgery from an ONET provider. Horizon adjudicated the claim. As reflected in an Explanation of Benefits ("EOB") issued by Horizon to Plaintiff, Horizon determined that Plaintiff's wife's surgery (identified in the EOB as "CPT Code 27487") was a covered service under her plan. Horizon's EOB reported that the total amount billed by the ONET provider for the surgery was $51,385.00, but that Horizon only "allowed" $4,959.98 for this service, of which it caused Plaintiff's plan to pay $4,250.25, after deducting $729.73 for co-insurance.

26. In reporting on how it processed the claim, Horizon failed to disclose either to Plaintiff (or his wife) or the provider the methodology Horizon used to set the allowed amount. Thus, neither Plaintiff nor the provider knew at that time that Horizon was using a percentage of Medicare to determine R&C charges.

27. On September 27, 2016, the ONET provider who performed the surgery on Plaintiff's wife filed an appeal with Horizon to challenge the benefit determination, in which it stated:

> It is our understanding that benefits were significantly reduced due to your determination that the billed charges are more than the usual and customary rate. We do not believe the reduction between the billed amount and the allowed amount is acceptable. As you are likely aware, such provider reimbursement rates are typically adjusted based on the usual and customary treatment charges for that specialty and the geographical region where treatment was provided. Further, many state and federal disclosure laws require insurers and administrators <u>to advise beneficiaries and providers as to how the reimbursement rate is determined</u>. However, the payment rendered does not appear to be comparable to rates charged for this service locally and no information has been given to support your position on how this claim was processed. (Emphasis in original.)

28. Horizon denied the appeal by letter dated October 20, 2016. Without addressing how it set ONET reimbursement rates, Horizon stated:

> The request for additional payment has been reviewed carefully according to the member's benefits and Horizon BCBSANJ's payment methodology. The claim for a total of $51,385.00 was processed correctly. An adjustment was not required. Our allowance is $4,959.58 and a payment of $4,250.25 was issued . . . The patient is responsible for the $47,124.25 balance.

29. Notably, in denying the appeal, Horizon did not offer any further appeal rights, merely giving phone numbers if the provider had "further questions." Nor did Horizon disclose the right to pursue litigation under ERISA to challenge the adverse benefit determination.

30. Thereafter, Plaintiff retained Medical Bill Navigators ("MBN") to assist in challenging the low benefit payment from Horizon. MBN had frequently worked with Horizon to address problems with benefit payments, and therefore would submit appeals directly to Horizon's in-house counsel.

31. On October 25, 2018, MBN emailed Horizon's in-house legal counsel to challenge how it had processed Plaintiff's claim, stating:

The SPD in effect for this DOS, 7/7/16, states that OON claims will be paid based on Reasonable and Customary fee schedule. However, Mrs. Weber's claim, detailed above, was paid instead based on 250% of CMS fee schedule – an amount that is much lower than R&C. Attached please find a copy of the pertinent SPD, as well as the specific pages which delineate R&C reimbursement. Assuming the information we have from Hoffman Laroche, the Plan Sponsor, is correct, then Horizon has violated the terms of the contract. Horizon is obligated to pay this OON claim based on R&C – as the SPD explicitly stipulates. Please assure that this claim is reprocessed in accordance with the written benefits, as delineated in the attachments.

32.     Horizon responded by email dated December 12, 2018, stating:

Regarding the [wife's] claim, we reviewed the claim and found that it was paid correctly according to the benefits. The Primary Surgeon claim, processed and paid via 250% of CMS, only after an attempt to negotiate was unsuccessful. Once the negotiation is unsuccessful, the claim is then priced based on the Out of Network guidelines in the benefit plan as summarized in our coding document which was stated to pay at 250% of CMS. You are correct that the SPD indicates that OON claims are to be paid at R&C as determined by the Plan and the Plan elected 250% of CMS.

33.     That same day, MBN responded with a lengthy email in which it explained why paying an R&C Plan based on a percentage of Medicare was contrary to the plan terms and ERISA, stating in part:

> **You acknowledge and admit that I am correct that the SPD indicates that OON claims must be paid based on R&C, but you then continue that statement with an oxymoron- that the Plan elected "R&C" of 250% of CMS**. CMS rates are much much lower than R&C rates, and that is a fact that can easily be proven, and is basic knowledge in this industry. CMS based rates are *NOT*, and cannot be, categorized as R&C, (CMS rates are much lower than R&C rates), and therefore **when an SPD delineates R&C reimbursement, the Plan does *not* have an option to elect CMS based reimbursement**. Doing so violates the terms of the contract – namely to pay at R&C.
>
> * * * *
>
> In light of this additional explanation, and rebuttal of Horizon's illegitimate and wholly invalid defense of its processing of this claim, <u>**please assure that this claim is reprocessed and paid at REASONABLE AND CUSTOMARY – as per the terms of the SPD, and that the additional payment due is issued without further delay**</u>. . . . <u>Please be aware that I have encountered Horizon engaging in this same type of misconduct with numerous self funded plans – paying for OON</u>

9

<u>claims at Medicare cased rates instead of at UCR rates (as stipulated in the Plan SPD). It behooves Horizon to correct the payment on this claim without further delay so that escalation of this matter can be avoided.</u>

(Emphasis in original.)

34. Horizon then responded by reiterating that "Horizon paid the claim correctly," further adding: "We administer benefits pursuant to a Plan Description, that is signed off by the employer, where the employer elected 250% of CMS as their OON payment fee schedule. I'm not sure what else Horizon can do as we paid as authorized by the Plan." Thereafter MBN and Horizon exchanged several additional emails, but with the same ultimate conclusion, that Horizon refused to alter its benefit determination based on the fact that it had allegedly agreed with the plan sponsor to set ONET reimbursement rates based on 250% of Medicare, regardless of the fact that the written terms of Plaintiff's plan required R&C-based benefit payments.

35. Horizon confirmed during the appeal process that it set the allowed amount for Plaintiff's claim based on 250% of Medicare as $4,959.98. FAIR Health, however, reports that the customary charge for CPT Code 27487 in the zip code in which the provider operates (07450) is $51,385, the exact amount charged by the provider. This demonstrates that Horizon deprived Plaintiff of benefits to which she was entitled.

36. Through Horizon's responses, it made clear that it would not consider altering how it processed Plaintiff's claim, as it deemed its decision to be final. Horizon further did not inform MBN or Plaintiff of any additional appeal or litigation rights that could be pursued to challenge the benefit denial.

37. In Plaintiffs' Plan, it states that an appeal of an adverse benefit determination, which includes reduced benefits at issue here, could be filed with the Claims Administrator, in this case, Horizon. Only one appeal was required under the plan. Rather than pursuing a second voluntary

appeal offered by the plan, however, Plaintiff has chosen to exercise his right to sue under ERISA to challenge Horizon's improper practices.

## HORIZON'S ERISA VIOLATIONS

38. Because Horizon has been delegated the responsibility to make benefit determinations for Plaintiff's Plan, it is an ERISA fiduciary. As such, it owes fiduciary duties of loyalty, due care and prudence to plan participants and beneficiaries, and has an obligation to comply with written plan terms and ERISA.

39. As detailed herein, the written terms of Plaintiff's Plan required Horizon to set the allowed amount for ONET services based on "R&C," which is the "level of charges being made by other similar providers in the locality where the charge is incurred" and for which Horizon's website claims that Horizon relies on data provided by Fair Health.

40. Yet, in direct contravention of these written plan terms, and Horizon's website, Horizon used a percentage of Medicare to determine Plaintiff's benefit payment. By doing so Horizon wrongfully denied benefits to which Plaintiff was entitled. Horizon also violated its fiduciary duty to comply with the written terms of Plaintiff's plan notwithstanding any contrary instructions from, or agreement with, plan sponsors (or anyone else for that matter).

41. Horizon's legal violations are reinforced by an analysis performed by the Employee Benefits Security Administration ("EBSA"), part of the Department of Labor ("DOL"), the federal agency which oversees ERISA. In a letter dated February 4, 2016, EBSA summarized its findings with respect to an investigation of an ERISA healthcare plan concerning various procedures it followed in making benefit determinations.

42. In the report, EBSA identified a plan which "required the out-of-network allowable amount be based on a UCR analysis," with UCR defined as "Usual, Customary, and Reasonable

rates for a specific geographic area." The investigation revealed, however, that rather than pay based on UCR, the plan administrator used a reduced amount based on an internal fee schedule. EBSA then concluded:

> It is our view that by failing to price out-of-network surgical claims using the method disclosed in and required by the [Summary Plan Description ("SPD")], the [Plan's] Board failed to act prudently and failed to discharge their duties in accordance with the documents and instruments governing the Plan, in violation of ERISA Sections 404(a)(1)(B) and (D).

The same analysis applies here.

## CLASS ALLEGATIONS

43. Horizon has adopted and applies internal policies for calculating benefits for ONET services which are contrary to the terms and conditions of the applicable ERISA plans and in violation of ERISA. Plaintiff's claims were not subject to unique policies, but serve as a representative example of many insureds and their ONET providers whose benefits were (and are) improperly reduced by Horizon.

44. Plaintiff, acting in his own behalf as a participant in his former employer's plan and as an Authorized Representative of his wife, a beneficiary in his Plan, brings claims on behalf of a class defined as follows:

> All persons in the United States who were insured under an ERISA health insurance plan issued and/or administered by Horizon if the written terms of the person's plan call for setting ONET reimbursement rates based on Reasonable and Customary charges ("R&C Plans") and if Horizon adjudicated the person's ONET benefit claim pursuant to a Medicare-based methodology, resulting in a reduced allowed amount.

45. The members of this proposed Class are so numerous as to make joinder of all members impractical. Although the precise numbers are currently known only to Horizon, Horizon insures approximately 3.6 million members. It can therefore reasonably be concluded that, at a minimum, thousands of insureds are impacted by these practices.

12

46. There are questions of law or fact common to the class, including but not limited to whether Horizon acted as a fiduciary when it engaged in the conduct at issue and whether Horizon's conduct violated the written terms of its R&C plans and/or Horizon's fiduciary duties.

47. Plaintiff's claims are typical of the class's claims because, like other class members, the written terms of Plaintiff's Plan require that ONET services be reimbursed based on reasonable and customary charges, yet Horizon applied a Medicare-based methodology.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the Class.

49. Horizon has acted on grounds that apply generally to the class, as Horizon has used a Medicare-based reimbursement policy to ERISA plans that require payment based on R&C. As a result, enjoining Horizon from engaging in this practice and requiring it to make proper R&C-based benefit determinations when processing ONET claims would be appropriate, and, as detailed below, is part of the relief sought.

50. Questions of law or fact common to the Class members predominate over any questions particular to individual class members. The overriding common question is whether Horizon's methodology for calculating ONET rates is consistent with the methodology set forth in its R&C plans and its fiduciary duties.

51. In its role as a claims administrator for the plans at issue, and in serving as an ERISA fiduciary, Horizon maintains records of when and how it receives, processes, and pays or refuses to pay claims for ONET treatment. Accordingly, the members of the Class could be readily and objectively ascertained through use of Horizon's records.

## COUNT I
### (Claim for Relief Under ERISA, 29 U.S.C. § 1132(a)(1)(B))

52. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

53. This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

54. Horizon systematically violated the terms of the Class members' ERISA plans by setting the allowed amounts for ONET services below the R&C rates identified by FAIR Health, causing the plans to pay less in benefits than the written plan terms required.

55. By ignoring plan terms, and applying internal policies so as to justify paying reduced ONET benefits, Horizon also violated its fiduciary obligations under ERISA.

## COUNT II
### (Claim for Relief Under ERISA, 29 U.S.C. § 1132(a)(3)(A))

56. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

57. This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin Horizon's acts and practices, as detailed herein. Plaintiff brings this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

58. Horizon systematically violated the terms of the Class members' R&C plans, and its own fiduciary duties, by setting the allowed amounts for ONET services below the R&C rates identified by FAIR Health.

## COUNT III
### (Claim for Relief Under ERISA, 29 U.S.C. § 1132(a)(3)(B))

59. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

60. This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress Horizon's violation of ERISA and of its R&C plans. Plaintiff bring this claim only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

61. By engaging in the misconduct described herein, Horizon financially benefitted in two ways: first, with regard to fully-insured plans or plans that include a stop-loss provision requiring Horizon to pay all benefits above a certain threshold, Horizon avoided paying benefits out of its own funds; second, with regard to self-funded plans, Horizon charged its corporate customers fees for serving as claims administrator while improperly denying benefits based on invalid reimbursement policies as detailed herein, and also lowered costs for its corporate customers, allowing Horizon to retain current customers and expand its business to new customers.

62. It would be inequitable to allow Horizon to retain these benefits, in light of Horizon's misconduct. Thus, Plaintiff and the Class are entitled to appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge, unjust enrichment or other basis, pursuant to 29 U.S.C. § 1132(a)(3)(B).

WHEREFORE, Plaintiff demands judgment in its favor against Horizon as follows:

A. Certifying the Class and appointing Plaintiff as Class Representative;

B. Declaring that Horizon violated its legal obligations in the manner described herein;

C. Permanently enjoining Horizon from engaging in the misconduct described herein;

      D.      Ordering Horizon to repay all class members, with interest, for the amount of ONET benefits underpaid as a result of Horizon's ERISA violations as alleged herein or, alternatively, ordering Horizon to reprocess all wrongfully denied claims in compliance with plan terms and without the improper reductions described herein;

      E.      As an alternative remedy, ordering Horizon to make an equitable payment to Plaintiff and members of the Class;

      F.      Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

      G.      Granting such other and further relief as is just and proper in light of the evidence.

Dated: June 13, 2019

                                                  Respectfully submitted,

                                                  /s/ John W. Leardi  
                                                  John W. Leardi, Esq.  
                                                  Nicole P. Allocca, Esq.  
                                                  BUTTACI LEARDI & WERNER LLC  
                                                  212 Carnegie Center, Suite 202  
                                                  Princeton, NJ 08540  
                                                  609.799.5150

                                                  D. Brian Hufford, Esq. (*pro hac vice* forthcoming)  
                                                  Jason S. Cowart, Esq. (*pro hac vice* forthcoming)  
                                                  Nell Z. Peyser, Esq. (*pro hac vice* forthcoming  
                                                  ZUCKERMAN SPAEDER LLP  
                                                  485 Madison Avenue, 10th floor  
                                                  New York, NY 10022  
                                                  212.704.9660

                                                  *Counsel for Plaintiff and the Putative Class*